May it please the court, my name is Keith Hurley and I have the privilege of representing Mr. Davis on appeal. Mr. Davis asserts two issues, one that the district court judge abused his discretion when he denied Mr. Davis' motion to withdraw his guilty plea because the judge coerced Davis to plead guilty in violation of Rule 11c1 and pursuant to 28 U.S.C. 455, the district court judge that heard the plea did not recuse himself when it was questioned about his impartiality. I think the chronology is important so I would like to go through some of the facts if the court would allow. Mr. Davis was indicted on March 23, 2011 for two counts of robbery, two counts of use of a firearm. On November 10, 2011, Mr. Davis entered not guilty pleas before Judge Gibney. The court took a brief recess because the attorney had not yet reviewed the indictment with Mr. Davis and so after the attorney reviewed the indictment, the court came back and set the case for a jury trial. On November 29, 2011, Mr. Davis filed pro se a motion to appoint new counsel because of the limited contact he had had with his attorney. On December 16, 2011, the trial judge granted a motion to suppress by Mr. Davis and Davis expressed then his concerns to the judge about the contact that he had had with his attorney and the fact that he wanted to file additional motions. So the district court judge allowed additional time to file motions. During the December 16 hearing, there was a dialogue between the court and Mr. Davis and the attorneys involved and there was a discussion as to the potential penalties and the possibility of a plea. The judge engaged the following conversation with Mr. Davis and U.S. attorney and some of it suggested during the dialogue that the judge, if the court could do for him, he said nobody can do anything for you, neither Mr. Gunlicks who was his attorney, definitely Bailey couldn't do anything for you and he asked the defendant whether he understood the seriousness of the penalties and he said I understood that last time we were here. So it was obvious that the defendant was well aware of what was going on and then the court engaged in a dialogue with the U.S. attorney about is there a count of which he could be found guilty and not face those dramatic penalties. It's our position that this started the dialogue which was improper between the U.S. attorney, the defense counsel and the court and it leaves the defendant with the impression that the court takes some view of the case and then the government talked about the potential of another plea arrangement and at the end the court says I understand. After talking about the case, the court looks at the defense and says I understand this is not a good case and tells the defendant, Mr. Davis, that you've got a difficult situation here if you get convicted of these offenses. I think all of us in the room would hate to see your life ruined in that way. But if all of this went on, why wasn't there a motion to withdraw the plea promptly? I mean, what? And of course in Elmore case, which is the sort of low star case in this area, there was a six week delay and the six weeks was found to militate against allowing withdrawal and here we have, you know, two months. And I say this because it sometimes seems to me that the criminal justice system is kind of insensitive to the interest of the witnesses whose cooperation we need and whose welfare we at least ought to try to respect. And these witnesses had moved on with their lives. The events themselves had to be very traumatic for them. And if there was going to be a trial, then of course they had to relive it and go through it. But with the guilty plea, I think they found, all right, this has been, there's been some closure here and they've moved on. And now two months afterwards, there's this motion to withdraw and then there's a delay after that. I just wonder whether it's really just after this period of time when they've tried to get on with their lives to drag them back and say, you're going to have to relive this whole thing. This individual has decided very belatedly to go to trial. If he decided to go to trial, of course they would have had to come. But it's, I try to put myself in the position of somebody who thought a matter had reached closure and then two, three, four, five, six, gosh knows how many months it is now. I find I've, you know, they're pulling me back in again. And that I think is why the delay factor is important. If this was as unfair as you say it was, I would have expected a motion to withdraw to have been made within a week. Well, the dialogue that I was talking about was at the December hearing, not the plea hearing. The plea took place on January 13th. An imbalance in the inconvenience to the witnesses and the defendant's constitutional rights, I think that has to take precedence, the defendant's constitutional right to a jury trial. My concern is a little different. I'm troubled that we might be putting the district court judge between a rock and a hard place. Because if the district court judge doesn't ensure that the defendant understands, fully understands the potential consequences of his or her decision, then you raise the potential of a challenge to the fact that the plea was, wasn't knowing involuntary. Well, and then, that's true. And there's a line of questions that the district judge can ask and stick to those questions. It's pretty clear. But the district court can't go beyond, okay. You think that I think he did go beyond that. He says this is a blue light special. Take it today or you go to trial next week. Twenty years or fifty years, you'll die in prison. That's not giving the defendant all of his choices. But isn't there, isn't there a tension, as Judge Duncan points out, between not, part of the Rule 11 hearing is you're supposed to explain what the prison, what the person is facing. Yes, sir. And you're supposed to make that, you're supposed to inform that individual to the fullest extent possible because that leads to the most voluntary choice. And he, you know, I'm, so part of my reaction to this is, my gosh, be careful what you wish for. You know, I mean, I know you're following your client's instructions, but Judge Gibney was trying to bend over backwards to make sure that somewhere down the line he didn't say, well, nobody told me. I agree with the court on that. It's just, but I think some of the language that Judge Gibney used went too far. And that's what concerned me when I was reading the transcript when he talks about the blue light special and dying in prison. And now I'm going to take a recess while you go talk to your attorney for an hour and a half about this plea agreement which he had just gotten. And so I think there is some element of coercion. And I, maybe Judge Gibney had the best of intentions. I think he probably did at the time, but he's But the district court also, the district court also went out of his way to make sure that this was, that the plea was being entered without any threats of coercion and that he was a little bit overly solicitous. But I guess if I'm forced to choose between somebody who bends over backwards to make sure a defendant understands what's up and somebody who just rushes through it and, you know, just said click, click, click, click, click, click. Because the criminal justice system, frankly, is sometimes it's a really hard thing for a defendant to maneuver, to negotiate. And you know what? And things go sometimes you don't understand, even with the assistance of counsel, what the choices are and what the consequences are. Here you have a district judge that tried to explain those consequences and was he a little overprotective? Maybe. But isn't that to be preferred over somebody that just leaves a defendant in the dark? Well, I would agree that that's to be preferred. But I think the only two choices that Mr. Davis was given that day was 20 years or life in prison. There was never any discussion about go to trial, be acquitted and walk out the door. And today only, blue light special, you take this deal or you go to trial. I'm not continuing this case. And then the dialogue is he takes a recess. The attorney says, I go back to the room to go over the plea agreement because I hadn't been able to do that except by phone. I could not hand him the plea agreement. There were some concerns. And because of those concerns, I told my client that I could go in and ask for a continuance. This was January 6, I think, or January 13. And so then they come back out and the judge has already told him either you take the plea agreement or you go to trial in a week. So Mr. Davis asserts that his counsel wasn't ready for trial or his statement of facts at the plea hearing sure didn't indicate to me that he was anything close to being innocent. I mean, we're not, we're really not in danger of incarcerating an innocent man here. Well, the problem is, is that if you're coerced into a plea and then you have to go in and plead guilty and you have to take the statement of facts, what's that defendant going to do? Say, no, they're not the facts to support the plea. He's now been told. Don't we look at the totality of the circumstances? I understand your argument in terms of what this looks like when you compare it with other cases. The judge gave me clearly, in my opinion, in reading this, and I think you've got to agree, he was trying to help this young man, at least in terms of, he even tells him, he says, you know, I give lighter sentences. I kind of have a reputation. I can't do it in this instance. And if you, basically, if you come in here with a notion of, because of my reputation, you can get something lighter, that's one thing. And basically, he's just laying out, and he doesn't do it immediately. He says, take some time and think this out. And he goes out, and about an hour or so later, comes back, and then he enters the plea. You know, when you look at it, you know, from a holistic sense. And even if you win today, what you might end up is getting your man 50 years. That's still on the books. It's one of those things that, okay, and you've got to argue the case, because, I mean, it's all before you. But the end result is, he can get 50 years still. He has the right to make that choice. And what's amazing, I'm with you. I've encountered these kind of cases a lot, believe it or not. I was in the military as a JAG officer, and I can tell you, you never had this problem, because whenever somebody came up and said they wanted withdrawal, you withdrew it immediately and took them to trial, and they got stuck with it. There was no such thing of, I'm going to let you take this agreement. And the defense counsel would do everything they could to try to get you to take that agreement. You didn't want it, you just got stuck with it. It was a scary thing. But here, in this world, this is, it's really, when you look at it holistically, it's almost like you need to do another analysis here, maybe like you do in the Strickland, or look at the prejudice of it, and look at the actual evidence, as you do in malpractice cases, and say, wait a minute. When we look at this thing here, this guy really has a good deal out of it, and he's complaining about it, because now he thinks he can go before the court, where all of this evidence is there. He's entered that plea for a reason, not that he was coerced into saying he's guilty because he didn't do it, as Judge Wilkerson has alluded to, but because he's coerced in taking this sentence, that is 20 as opposed to 50. It's a difficult argument to follow when you look at it holistically of what, and we're not trying to protect the defendant. I mean, the federal courts don't go out of a way to give light sentences on things up here. I mean, so this is, and here's one last point that's interesting. You tell me if this is wrong. That's not a usual plea agreement. A plea agreement, from what I understand from the record, the 20 years, they don't give those. They didn't have to give that, but something was done unusual in this case that misled them into thinking a witness or someone would be there, and they gave this special deal, and they left it on the table, and the judge knew it. You don't get this deal. They don't, or they wouldn't give you this deal, and they gave him this deal, and he's got 20 years. Really? I mean, I don't know how you get around it, but. The government, I'm sorry. Go ahead. The government talked about that, that the witnesses were not available, so the delay didn't prejudice the government in this case, if you look back at the more factors. I'm not I think you have to use the more factors. Was this a usual deal that you would get on a case like this, with this kind of evidence, from your knowledge? Reading the transcript, I would agree with the court, but I don't know the answer to that. I mean, even representing, we don't do this. We don't, but we're going to stick with it, because we offered it to him. The other thing I would like to address. And the judge knew that, when he says, are you sure you want to take this off the table? Because he knew, ordinarily, you're not going to get this deal. You're going to go 50 years, because they could prosecute this case. There's no way in the world you're going to get a deal like that. You might get 40, but you're not going to get 20. Good walk out the door. Could I ask one? Possible. That was his choice to make. I'm sorry, I just have a very simple question, and you can look this up when you sit down. In your brief, page 14, you say that Davis' attorney acknowledged that, during the recess, he could not have direct personal contact with Davis, nor could he show Davis legal arguments. Yes, ma'am. And if you could, when you sit down, take a moment to find that in the JA, I'd appreciate it. I can do that. I know where that is. Don't do it now. Don't take your time. Yes, ma'am. And Judge Wilkinson, in regards to the timing of the motion, and actually, that's where the district court didn't recuse himself. It probably works in my favor, because Judge Gibney said that, I find that because he's incarcerated, he filed the motion pro se, that the delay really doesn't work against him in that case. So as a factual finding, Judge Gibney's finding kind of helps me in that regard. The other thing I would point out is this indictment came down March 2011. The discovery package wasn't provided to defense counsel until January of 2012, two weeks before trial. And then my client has an hour and a half to go over the evidence in the plea agreement. I agree with everybody that the judge was probably trying to encourage him to take this plea agreement because it was in his best interest. But then he gets back and starts thinking about it. And I think it's significant that he filed the motion, his attorney didn't. And then his attorney joined in. He knows how, when he doesn't want his counsel, he wants to fire him. I mean, he has a strong control. He's filing stuff pro se. I mean, you've got to look at the person you're dealing with. I mean, I don't know if he's a guy you can make do something. I mean, that kind of comes to me from the evidence, from the record. I mean, what you're saying is he's been badgered into taking this position, but everything throughout the record looks like nothing is badgering this man. He wants his counsel. He wants, he files his pro se motion. He's doing things affirmatively. Can I respond to that? Sure. That addresses one of the more factors is whether he had close assistance of counsel. The other side of that is maybe his attorney's not doing what he's supposed to do. And so he files his own motion pro se and comes in. And actually, Judge Gibney hears from Mr. Davis, not his counsel on some of these issues. I wasn't speaking to the competence of counsel. I was speaking more of the individual as to being coerced. And what it indicates is sort of whether that person indicates conduct of one who is susceptible to that kind of thing. Well, I don't know. It doesn't look like it to me on this record. Yes, sir. And the court did find that fact. And if you want to say that the court declined to weigh the two-month gap against Davis, which is true, under the more factors, the court did find that Davis had close advice of competent counsel, I believe. Yes, ma'am. Thank you. Ms. Miller. Good morning. May it please the court. My name is Angela Miller, and I represent the United States in this case and, in fact, was the prosecutor of Mr. Davis and was president in court for all of the proceedings below. I would begin by pointing out that this defendant did have very close assistance of counsel. He had an attorney who had discovery on time and filed within the 11 days of arraignment a motion to suppress. Right. And the district court so found, and I believe counsel for Mr. Davis agreed, if you sort of click through the more factors, the plea was knowing involuntary, there was, it couldn't be said that there was a credible assertion of innocence, since he stated under oath that he was, in fact, guilty. The district court didn't weigh, there was a two-month gap, although the court didn't hold that against him. He did have close advice of competent counsel. There was prejudice to the government and inconvenience to the court. So if you, I mean, the district court did tick through the more factors. Yes. Yes, Your Honor, he did. And I would have to say, Judge Wilkinson, your point about the victims is the point that the United States was making on the two-month delay. He decided that he wanted to plead guilty prior to the date of the plea. He came in on the morning of the plea and he wanted to renegotiate a plea that was already done. And as Judge Wynn pointed out, was an amazing offer. And I continued with that offer up until that day and no further because I had made a mistake and I had made an offer to him that was a 20-year term when he would have gotten significantly more. It was a very strong case. And as a result of that, I felt that I had an obligation to honor that agreement that I had made, even though I later found out that the witness I thought was unavailable was available. As far as the two-month delay is concerned, the United States never held the position that that would be, would not be a burden on the United States. And it wouldn't... I would appreciate hearing someone say they will honor that that they've agreed to do. Yes. And I took that obligation very seriously because it was a very, very good deal for this defendant. I mean, and what we talked about in December, there was no plea agreement on the table. There was nothing about a plea when Judge Gibney was talking to him about... Judge Gibney is obvious, at least from the kind of my reading of it, that he was trying close. I mean, this dying in jail, you can die in, and it was put into language when you look at cases like the, I think it's the Beard case out of the First Circuit and the Johnson case. Some of this business of where you can push it too far and maybe get close to threatening the defendant, it gets close on it. But I'm just, I'm having some difficulty when I look at the more factors. And of course, I think the voluntariliness is the big one and the more factors. But when you look at the whole situation, I'm just not feeling this is a case in which this is one we ought to tell a judge that you didn't do the right thing here. I understand the defendant needs to go to trial. He should have an opportunity to go to trial. As I said, if he was in the military, he would have gone. He'd had his 50 years. Everybody would have been home by now. Right. And, but I, you know, I guess, well... And Judge Wynn, to just expand on that a little bit, I would point out the defendant's prolific pro se filings in this case and point out that in his first filing, there's a little single line in there. And I'll point to the page number in just a moment if the court would like me to, where he says, I felt coerced when the judge told me to think about my, think carefully about what I'm doing. That was it. The rest of it was my defense attorney, my defense attorney, my defense attorney. Then interestingly, on April 17th, when he files his next pro se motion to withdraw, not a mention of anything to do with the judge coercing him. It's all about my attorney did this and my attorney did that. But what did his attorney do? The attorney filed the motion to suppress within 11 days and got it granted. When the United States made a sweetheart of an offer to him, he immediately went to the defendant, presented the offer, had discussions with him over the telephone and then in person and got him to understand, at least preliminarily, what that offer was. So that, because that offer was going to go away. And once, and it was that same day that I found out that the person that I thought was a necessary witness was not the person who had logged on to the, to take the 911 call. So we honored the agreement. But that defense attorney jumped to it immediately, filed things on time, got him a 20 year sentence, you know, spent time with him, spent an hour and 15 minutes. And why did he do that? Because on the morning of the plea, he wanted a better deal and he indicated he didn't want us coming back on ACCA, on the Armed Career Criminal Act, when this was a 20 year agreed sentence. So ACCA wasn't even on the table. Even if he was ACCA, he wouldn't have gotten it in this agreement. And he didn't want, and he wanted to let the guidelines roll. So Judge Gibney had a red flag that said, you need to go back and explain to him what he's going to be giving up in an hour and a half or two hours, because ACCA is not here and, and guidelines are not a factor here. This is an agreed upon 20 year recommendation. Go back and talk to him because it is a blue plate special. I told that to the judge, this is coming off the table today because all the witnesses that I need on Wednesday are heading here from out of town. I didn't say in 60 days they would still be around. And in fact, Judge Wilkinson, they aren't. One is in Florida. One left the country. One moved to Maryland. Is this in the record? Yes, it all is in the record, Your Honor, on the day of the plate and then in the April filings. You know, it does. I agree that the most important thing is the voluntariness of it. But the system does depend on witnesses. And I just, I don't, I really don't like jerking people around that way. And when they've made other plans justifiably. Right. On the grounds that the matter has been resolved and then suddenly they're pulled out from wherever they happen to be and forced to relive events that they thought they'd lived behind, that they'd left, left behind. I mean, at some point people have a right to leave traumatic episodes in the rearview mirror to the extent that they can. Yes, Your Honor. I do not feel that the system always takes account of the stress and the toll that it takes upon witnesses when we let something like this drag on and on and on. And that was the point that I made. It's a terrible thing. That was the point I made to Judge Gibney. If this was a case of five police officers, there would not be any kind of prejudice. Because it's not to the government. It's to the government's witnesses that we're talking about in this case. And it's about them coming back and reliving an armed robbery. Victims of bank robberies. In this case it was victims of Hobbs Act robberies. So he was gunpoint robberies of a Subway sandwich shop and a gunpoint robbery of a GameStop game store. I can't even imagine. But we have to do it when somebody promptly goes to trial. Part of the purpose of the Speedy Trial Act is not only to give the defendant a prompt trial but also so that witnesses won't have things just dragging on and on in their lives and that they can reach some form of closure. And the Speedy Trial Act does take into account not only the interest of defendants but also the interest of witnesses in having a trial proceed promptly. And the third more factor does, I realize that Judge Gibney didn't count it against him, but a two-month delay is longer. And that third factor does expressly take into account a situation like this, where witnesses are widely scattered and the disruption to their lives is far more than inconvenience. It would be unbelievable. Exactly. They're going back and forth on, they have a trial, they're coming in for a trial, they had flights and hotels booked and airline tickets arranged and then now you're not coming in and then two months later, oh guess what, you are coming in. How could we tell that to a victim of something like this? How could we say that to them? Your Honor, if there are no further questions, then I would cede my time. Thank you. Mr. Hurley. The phrase that you're asking about is on page 118 at the bottom. Thank you. And that's where he's talking about the late discovery responses. And counsel submits and agrees that he would have preferred to have had additional time for trial, which is what Mr. Davis said during the time that he came back for the plea. There are a couple of points I'd like to make. One is that when you look at the statement of facts and the plea after he has had this dialogue with the court and his attorney, that's kind of bootstrapping the original plea. And whether it's knowing involuntarily or not, I'll submit that it's not because he has now been coerced into the plea of guilty. And so everything beyond that point is sort of tainted by the judge's actions. And again, I'm not criticizing the district judge. I agree with the bench that I think Judge Gibney was trying to protect my client's interest. But I think some of his statements left my client with the opinion that the court had some interest in the outcome because of the language about why would he even say I'm your sentencer as if, you know, if you take a plea, maybe I can cut you some slack here because he's now told him if you go to trial and get 50 years, there's nothing F. Lee Bailey can do about it. I'm not even sure my client knew who F. Lee Bailey was. But that dialogue takes place. And so I would ask the court to consider the view you had mentioned about the witnesses. The witnesses would not have been inconvenienced if the court had allowed him to withdraw his guilty plea and go to trial. We would have gone to trial on the regularly scheduled day. So the witnesses would not have been inconvenienced. This drug out because of it. Talking about if the plea were withdrawn. Oh, at the later date. Yes, sir. Well, even then, if the well, I understand that with the two months beyond that. I guess the initial argument is that he was coerced into the plea to begin with. If the court had done as Judge Wynn had said, take back the plea and go to trial, then the witnesses would not have been inconvenienced. The other thing, and of course, it was mentioned about some of the findings that Judge Gibney came up with. And that's the second. Well, if that weren't an appellate issue, I'd be here for that, too. Yes, sir. But the other error, I think, was when Judge Gibney made his own evidentiary determination as to the factors under Moore. I think he should have recused himself and had another judge hear that. So I would ask the court to consider vacating the judgment, reversing it, and remanding it. Thank you. We see that you're court appointed. And I do thank you very much and appreciate both of your arguments. And we'll, at this point, we want to thank our courtroom deputy. And at this point, we will adjourn court and come down and read counsel.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, James A. Wynn, Jr.